**UNITED STATES of America,**
**Appellee,**

v.

**Kenneth KLEIN and Emory Weiss,**
**Appellants.**

**No. 380, Docket 27459.**

United States Court of Appeals Second Circuit.

Argued June 7, 1962.

Decided July 30, 1962.

George I. Gordon, New York City (Frank Brenner, New York City, on the brief), for appellant, Kenneth Klein.

Joel T. Camche, New York City (Lee W. Meyer, New York City, on the brief), for appellant, Emory Weiss.

Irving Younger, Asst. U. S. Atty. for the Southern District of New York (Robert M. Morgenthau, United States Atty. for the Southern District of New York, and Sheldon H. Elsen, Asst. U. S. Atty. for the Southern District of New York, on the brief), for appellee.

Before CLARK, WATERMAN and MOORE, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

Kenneth Klein and Emory Weiss appeal from judgments of conviction after

a jury trial on both counts of a two-count indictment charging them (First Count) with unlawful interstate transportation of securities of a value in excess of $5,000, i. e., American Express Company Travelers Cheques (18 U.S.C. §§ 2 and 2314) and (Second Count) with unlawfully conspiring to violate § 2314 (18 U.S.C. § 371) and from orders denying new trials. A third defendant, named in the indictment, Sidney Kastner, pleaded guilty before trial and was the Government's principal witness.

Both Klein and Weiss claim their convictions were erroneous because (1) the government failed to prove that checks worth at least $5,000 were "stolen, converted or taken by fraud" and (2) because the evidence was inadequate to support the indictment counts. Such an appellate approach requires a review of the evidence.

Kastner, a bartender in New York City, had at the time of the trial (December 18, 1961) known Klein and Weiss for about fifteen months or a year-and-a-half. Weiss, previous to the transactions set forth in the indictment, had told Kastner that he (Weiss) could get a lot of travelers' checks which he bought at 30 to 45 percent of the dollar value from "people that either stole them or pickpockets or something." Weiss offered to split the proceeds if Kastner would cash the checks. Kastner was willing to participate in this arrangement and four or five times in the year following cashed checks supplied by Weiss at various banks. About a month after the first Weiss conversation, Klein entered the picture boasting of a "better source of receiving these checks" than Weiss had and offered Kastner the same percentage as Weiss was paying. Kastner received checks from Klein some fourteen or fifteen times which he cashed at banks and divided the proceeds with Klein.

On August 6, 1961, Kastner, Klein and Weiss met in Klein's hotel room where Klein brought out a batch of checks totalling $5,300 face value. He laid them on a table in two piles. For the checks in one pile he said he had paid thirty per-

cent; for the checks in the others forty-five percent. Klein suggested that Kastner go to Baltimore for the job "because it is a real live town." Kastner took the checks and departed.

Later that day Weiss called upon Kastner and expressed regret that he (Weiss) didn't have enough money to buy $4,300 of the checks in the name of Victor Casafus and had to go to Klein to "make the buy on the checks."

The next day Kastner started on his expedition but never reached Baltimore. After cashing checks in Elizabeth, Trenton and Camden, he tried Philadelphia but found that city "live" enough to recognize the fraud and without "brotherly love" for swindlers. There he was apprehended with $3,065 in cash and the balance of the checks on his person.

The post-arrest events are not without significance. Kastner, released by Philadelphia police, upon his return to New York immediately reported the events to Klein, who gave him some money and rather ungenerously accused him of inventing the arrest story in order to keep the entire proceeds for himself. A short time thereafter Weiss told an acquaintance, Schechter, that he had had a "tough break. He had to lose his $1,700 by Sidney Kastner being greedy. He couldn't wait another day to cash the checks."

Klein and Weiss both argue that the amount of checks involved should be limited to an aggregate amount of $870 which five witnesses testified represented checks originally issued to them but which had unaccountably disappeared. Casafus, in whose name checks in the amount of $4,300 were issued, was not called. However, in order to satisfy the statute it was not necessary that the government prove that the checks were stolen; it was enough that it show that they were converted. They were not issued in the names of Kastner, Klein or Weiss. They required forged endorsements to be negotiated by any of the three. Clearly their acts evidenced a conversion of the entire amount. The interstate nature of the crime is establish-

ed by the suggestion made at the hotel room meeting that Kastner go to Baltimore followed by his actual interstate activities.

*Klein*

██ There is no merit to Klein's argument concerning the amount of the checks. He produced checks totalling at least $5,170 and admitted that he had purchased them at 30–45 percent of their face value. His principal point relates to an answer given by Schecter concerning a conversation at a bar when Schecter, Klein and Weiss were present. Weiss was talking; Klein "was just listening, that is all" and was "about two feet away." Schecter said: "Well, I heard Emory Weiss talking that he lost $1,700 on the deal, and Kenneth Klein lost about a little more." The government introduced the conversation as "simply admissions" and the court received it "with respect to each defendant only insofar as each defendant participated in the conversation." The interpretation which the court and prosecutor put upon Schecter's answer as containing admissions by Weiss and Klein occurred in the robing room and not in the presence of the jury. Upon summation both prosecutor and counsel for Klein argued their respective versions and the court's charge properly submitted the problem of resolving the question to the jury. Furthermore, quite apart from this alleged admission, there was ample evidence to sustain Klein's participation in the crime.

█ Klein's final point is that a post-indictment admission by Weiss was prejudicial. The court was particularly careful to safeguard Klein's rights by saying to the jury "although there has been no objection by counsel, this statement would only be received as against the defendant Weiss and not as against the codefendant." On the conspiracy count, the court was equally explicit saying that any statement made by Weiss after the termination of the conspiracy "is binding only on Weiss."

*Weiss*

█ Naturally Weiss endeavors to disassociate himself completely from Klein. He adopts Klein's argument that the amount of the checks was insufficient under the statute and then argues that it was Klein who produced the checks, Klein who paid for the checks, Klein who gave Kastner his instructions, and Klein who received payment from Kastner. Weiss would interpret his previous check dealings with Kastner as proof that he operated independently of Klein. He points to his financial inability to buy the $4,300 Casafus checks and disposes of Schecter's testimony by attacking Schecter because of a strong motive to fabricate a story to help himself. However, Schecter's criminal record was put before the jury. This record was stressed in the court's jury instructions that "In the instance of Schecter, in passing on his credibility you likewise may take into account his criminal record" and "You may also consider whether Kastner or Schecter were inspired by any motive of self-interest, or advantage or hostility to the defendants so as to give false or colored testimony against them." Schecter's credibility was a jury question.

Weiss's post-indictment admission that the indictment against him was correct was not obtained by fraud or coercion and no objection thereto was taken during the trial. Moreover, there was adequate proof of Weiss's participation quite apart from this alleged admission.

Schecter's post-trial recantations and his re-recantations were carefully weighed by the trial court on the Rule 33 motion for a new trial. The motion was properly denied.

The judgments of conviction of Klein and Weiss and the orders denying new trials are affirmed.